UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MASSACHUSETTS NURSES ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL NURSES UNITED, AFL-CIO<br><br>Defendant | Civil Action No. _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

### Nature of Action

1. This action is brought under 29 U.S.C. §185 and the Declaratory Judgment Act, 28 U.S.C. §2201. The plaintiff seeks a determination of the parties' rights and other legal relations under a contract among labor organizations, entitled "Agreement of Consolidation and Affiliation".

### Jurisdiction and Venue

2. The District Court has original jurisdiction over this action pursuant to 29 U.S.C. §185(a) and (c). Venue in this judicial district is appropriate pursuant to 29 U.S.C. §185(c).

Case 1:15-cv-11804-WGY   Document 1   Filed 05/08/15   Page 2 of 5


## The Parties, and Background Facts Relating to the ACA.

3. The plaintiff Massachusetts Nurses Association ("MNA") is a labor organization within the meaning of 29 U.S.C. §185(a) and maintains a principal place of business in Canton, Massachusetts.

4. The defendant National Nurses United, AFL-CIO ("NNU") is a labor organization within the meaning of 29 U.S.C. §185(a). While it maintains principal places of business in Chicago, IL, Oakland, CA and Washington, DC, its duly authorized officers and/or agents are engaged in representing or acting for employee members in Massachusetts, including eastern Massachusetts.

5. The MNA is a membership organization that currently has approximately 23,000 RN members who work in health care institutions throughout Massachusetts. The MNA has been in existence since approximately 1903.

6. In or around 2009, the MNA entered into a contract entitled "Agreement of Consolidation and Affiliation" (ACA"). The other parties to the ACA were "United American Nurses, AFL-CIO" ("UAN") and the "California Nurses Association, National Nurses Organizing Committee" ("CNA/NNOC"), both of which were labor organizations within the meaning of 29 U.S.C. section 185. The ACA contains no expiration date. A true and accurate copy of the ACA is attached hereto as Exhibit A and is made a part hereof.

7. One of the things the contracting parties did in the ACA was to create a new entity - the NNU - which was described therein as a "national labor organization". This was accomplished through the self-described "consolidation and affiliation" of the UAN and CNA/NNOC. See Exhibit A,

paragraphs I and VIII (A).  Upon the effective date of the ACA, and pursuant to paragraph XIII (A) of the ACA, the UAN terminated its separate existence, while CNA/NNOC – which remained in existence as an entity - agreed to discontinue its national organizing activities.

8.  The ACA also served as the vehicle by which the MNA "affiliated" with the NNU, and it set out the MNA's continuing rights and responsibilities *vis a vis* NNU as an affiliate thereof.  The ACA regulated the topic of withdrawal from affiliation; it provided in this respect at paragraph XIV (5) that that the MNA "[m]ay withdraw from the [NNU] by serving written notice of intent to withdraw on the Executive Council, thirty (30) days prior to the effective date of such withdrawal."  Per the ACA, MNA members also became members of the NNU, and a person who had formerly served as the MNA's elected president became a co-president of the NNU.

9.  The ACA includes a term by which a constitution was to be created for and adopted by the NNU.  Those events occurred as contractually called for.

10.  The ACA also includes, at paragraph IV (A), a term that provides as follows:  "[NNU] shall be governed by the [NNU] Constitution and the [ACA].  In the event of a conflict between any provision of the [ACA] and the [NNU] Constitution, the [ACA] will prevail."

11.  Concerning governance of the NNU, the contracting parties agreed at paragraph IV (A) that "[t]he [NNU] Convention will be the highest governing body of the [NNU], with jurisdiction and duties as set forth in the Founding

Constitution." The ACA also provided at paragraph V (B) that the NNU would have a representative "executive council", and specified the composition thereof.

12.   As of the time the ACA became effective, the MNA had been "certified" as the collective bargaining representative of RNs at a number of public and private-sector health care facilities in Massachusetts. Since the ACA became effective, the MNA has continued to serve as the exclusive bargaining agent for those unionized RNs.

### The Asserted Breach of the ACA

13.   In or around April 2014, the NNU's Executive Council passed a "Resolution" that read as follows: "Be it resolved that the governing document of the NNU is the constitution and *the [ACA] has no binding effect as of adoption of amended constitution of 2012*". (Emphasis added).

14.   The MNA's representative on the NNU Executive Council voted in opposition to that resolution.

15.   The Resolution was proposed and voted on in the context of a dispute that had arisen involving an NNU "organizing campaign" underway in the District of Columbia. An "organizing campaign" is an effort by a labor organization to convince a group of workers to select it to be their exclusive collective bargaining representative. Under paragraphs VI (B) and VII (B) of the ACA, the right to represent the unit of RNs that the NNU was targeting belonged to the "DC Nurses Association", then an NNU affiliate; that is to say, the targeted RNs were within the "jurisdiction" of the DC Nurses Association.

16.     The Resolution by its terms purports to nullify the ACA, and/or "read out of it" important protective terms governing the legal relations between the MNA and the other entities bound to the ACA and/or created by it.  There is no provision in the ACA that permits its nullification in general or the termination/voiding of paragraph IV (A) in particular.  The Resolution creates doubt as to the ACA's continued validity and over matters that are specifically regulated by the ACA, including but not limited to and the jurisdictional rights of NNU affiliates and their correlative right to organize employees within the scope of their jurisdiction without interference from the NNU.

**WHEREFORE**, the MNA prays that the Court, after a hearing, a) declare that the ACA remains in effect and is valid and binding; b) declare that the Resolution is a material breach of the ACA and as such is of no force or effect and c) order such affirmative relief as is appropriate in the circumstances.

>Respectfully submitted,
>
>For the Plaintiff,
>
>Massachusetts Nurses Association,
>
>By its attorneys,
>
>*/s/ James F. Lamond*
>James F. Lamond
>McDonald Lamond Canzoneri
>352 Turnpike Road, Suite 310
>Southborough, MA 01772-1756
>(508) 485-6600
>jlamond@masslaborlawyers.com

Date:  May 8, 2015